UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| ADIL HADI AWADH, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 08-78 (RMC) |
| MICHAEL CHERTOFF, Secretary, U.S. Department of Homeland Security, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiffs Adil Hadi Awadh and Mohammed Jassim Tuma are Iraqi nationals who entered the United States in 1996 and sought asylum and withholding of deportation when the Immigration and Naturalization Service ("INS") sought to exclude them. INS and the Plaintiffs entered into a Settlement Agreement whereby the Plaintiffs are permitted to remain in the United States, subject to certain conditions. Under the Settlement Agreement, Plaintiffs may seek modification of those conditions on a semi-annual basis. They complain that the Department of Homeland Security ("DHS")[1] failed and refused to respond timely to requests for modification that Plaintiffs submitted in 2003 and 2005. Plaintiffs seek to compel DHS and Immigration and Customs Enforcement ("ICE"), a component of DHS, to "adjudicate Plaintiffs' . . . respective requests for review of their custody status and waived rights." *See* Compl. ¶ 1.

In light of the Complaint, DHS issued a final response to Plaintiffs' requests on May 7, 2008. Defendants move to dismiss, arguing that Plaintiffs' Complaint is moot and that, in any event, the Court lacks jurisdiction. The Motion to Dismiss [Dkt. # 11] will be granted.

---

[1] INS ceased to exist on March 1, 2003, and DHS assumed responsibility for many of its functions. *See* Compl. ¶ 17.

## I. BACKGROUND

In 1996, INS sought to exclude Messrs. Awadh and Tuma on the grounds that they were inadmissible pursuant to Section 212(a)(7)(A)(i)(E) of the Immigration and Nationality Act, which requires immigrants to possess valid entry documents. *See* 8 U.S.C. § 1182 ("Except as otherwise provided in this Act, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States."). Plaintiffs sought asylum and withholding of deportation and the INS opposed the requests on national security grounds. Plaintiffs and INS entered into a Settlement Agreement on June 9, 1999. *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") [Dkt. # 11], Ex. 1.

Under the Settlement Agreement, Plaintiffs were declared inadmissible but were permitted to reside in the United States under certain conditions and with certain rights waived. The conditions on Plaintiffs' status were set forth in Attachment D to the Settlement Agreement. The conditions included a requirement that both Plaintiffs remain in Lancaster County, Nebraska, at all times; contact the Chicago Command Center of the INS every day; and receive written approval before engaging in any particular employment. The INS agreed that upon written request, it would reevaluate the status and conditions of Plaintiffs' custody on a semi-annual basis. Plaintiffs are also entitled to a review of rights waived through the Settlement Agreement for possible restoration of those rights.

Plaintiffs specifically waived certain rights as a condition of their release. By the terms of the Settlement Agreement, they waived "any right to administrative or judicial review of any custody status or conditions of [Plaintiffs'] custody as provided in Attachment D." *Id*. § VI. They further "knowingly and voluntarily agree[d] to waive . . . any right to any claim for relief from these Orders of Exclusion for which they might be eligible, including, but not limited to, asylum, withholding of deportation, adjustment of status . . . [and] any right they may have to challenge any

provision of this Agreement in any U.S. or foreign court or tribunal." *Id*. § VIII-A. The Attorney General (now the Secretary of DHS) retained discretion, upon written request, to restore any or all of the rights waived in the Agreement. *Id*. However, the Settlement Agreement expressly waived "any review, administrative or judicial, of the Attorney General's consideration of or decision relating to any request to restore rights waived by this Agreement." *Id*.

In 2000, Plaintiffs sought modifications of the conditions of their custody. INS completed its review of those requests on January 23, 2001. *See* Defs.' Mem., Ex. 2. Mr. Awadh was (1) released from the requirement that he live in Nebraska; (2) released from the requirement that INS approve any employment; (3) permitted to call INS weekly instead of daily; and (4) permitted to have monthly in-person meetings with INS officials at the closest INS office to his new residence instead of in Nebraska. INS declined to modify the conditions of Mr. Tuma's custody.

Plaintiffs submitted additional requests to DHS in 2003 and 2005 for review of their custody status and restoration of waived rights. They filed the instant Complaint on January 15, 2008, after they received no response to either request. In response, ICE, the relevant agency within DHS, issued a final response to Plaintiffs' requests on May 7, 2008, immediately before its answer was due to the Complaint. *See id*., Ex. 3. That response relaxed the conditions on Plaintiffs' presence in the United States. Plaintiffs are permitted to call DHS on a monthly basis instead of weekly or daily; they may appear every six months in person at an ICE office instead of monthly; and Mr. Tuma is no longer required to obtain approval of his employment. In exchange for these modifications, Plaintiffs must give notice if they will travel outside their states of residence and must notify DHS of any employment changes. On May 14, 2008, in response to concerns raised during a teleconference with Plaintiffs' attorneys, ICE sent Plaintiffs revised orders of supervision and a letter clarifying the effect of the new orders. *See id*., Ex. 4. ICE did not specifically address any change to Plaintiffs' waived rights.

## II. LEGAL STANDARDS

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because subject-matter jurisdiction is an Article III as well as a statutory requirement, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

Subject-matter jurisdiction focuses on a federal court's power to hear the claim. Therefore, a federal court must give a plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required on a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003). Moreover, a court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III. ANALYSIS

Plaintiffs concede that their requests for relaxation of conditions of custody have been answered by ICE's May 14, 2008 letter. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss [Dkt. # 12] at 5. They insist, however, that this case is not moot because their requests for restoration of waived rights

continue to go unanswered. *Id.*; *cf. Bouguettaya v. Chertoff*, 472 F. Supp. 2d 1, 2 (D.D.C. 2007) (holding that alien's request for a writ of mandamus to compel United States Citizenship and Immigration Services ("USCIS") to process application was moot because application was denied following filing of the action). They further contend that their requests to restore waived rights are the equivalent of applications to adjust status,[2] not contract claims, and are thus subject to this Court's jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 555, 706. *Id.* at 6.

Plaintiffs find themselves in a cul-de-sac without an outlet. They waived their rights to file applications to adjust status and their current requests cannot be deemed such applications until and unless ICE releases them from that waiver. Their suit complains of the slow pace of ICE's response to their requests. It does not, and could not, ask the Court to order ICE to exercise its discretion in any particular manner. *See* Defs.' Mem., Ex. 1 §§ VI, VIII-A (the Settlement Agreement bars "any review, administrative or judicial, of the Attorney General's *consideration of* or decision relating to any request to restore rights waived by this Agreement.") (emphasis added)). Plaintiffs' remedy, if any, is procedural only and, even if successful, could not result in an order to ICE to treat Plaintiffs' requests as applications to adjust status.[3]

Thus, Plaintiffs can present, at best, a breach of contract action based on the terms of the Settlement Agreement. *See Hansson v. Norton*, 411 F.3d 231, 234 (D.C. Cir. 2005) (explaining that a claim in which a federal agency fails to comply with a settlement agreement to which it is a party

---

[2] Applications for adjustment of status are submitted to USCIS, an agency within DHS. *See* Defs.' Mem. at 5, Ex. 2.

[3] Were the Court to accept Plaintiffs' invitation to construe their requests for relaxation of their waived rights as applications to adjust status, it could be deemed to have transformed Plaintiffs' suit into an effort to breach the Settlement Agreement – in which they explicitly waived their rights to file such applications.

is a claim sounding in contract); *Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004); *Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003). That action could proceed only under the Tucker Act, 28 U.S.C. § 1491, which provides the only basis for waiver of sovereign immunity. *See Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992).[4] However, the Tucker Act provides for monetary remedies only and does not give the Court jurisdiction to issue injunctions, which are equitable remedies. *See Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 178-80 (D.D.C. 2006).

## IV.  CONCLUSION

Inasmuch as the Court is without jurisdiction to provide the remedy Plaintiffs request, it must dismiss their Complaint. A memorializing order accompanies this Memorandum Opinion.

Date: June 24, 2008                                                                /s/
                                                                    ROSEMARY M. COLLYER
                                                                    United States District Judge

---

[4] The APA expressly precludes judicial review of challenges to agency action if the plaintiff seeks relief that is "expressly or impliedly forbidden by another statute." 5 U.S.C. § 702. The Tucker Act is a statute that "impliedly forbid[s]" district courts from granting equitable relief in APA actions that are founded upon a contract claim. *See Transohio*, 967 F.2d at 609. Therefore, the APA's waiver of sovereign immunity does not extend to contract claims.